UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **DEAN ARLO ARP,** *et al.*,<br><br>    Plaintiffs,<br><br>        v.<br><br>**SUPERIOR COURT OF THE STATE OF WASHINGTON,** *et al.*,<br><br>    Defendants. | Civil Action No.  13-67 (JEB) |

## MEMORANDUM OPINION

*Pro se* Plaintiffs Dean Arp, Wanda Arp, and Charles Miller have filed this abstruse suit against six named defendants: a Washington State Superior Court, two judges and a commissioner of that court, and two attorneys who represented parties adverse to Plaintiffs in prior proceedings in that court.  Plaintiffs also sue 199 "John and Jane Doe[s]."  See Compl., ¶ 17.  In two separate Motions to Dismiss, Defendants raise different grounds for jettisoning the case.  Although there are multiple reasons for doing so, the Court need look no further than lack of personal jurisdiction.

**I.     Background**

Plaintiffs' Complaint is nearly incomprehensible, but seems to arise from unlawful-detainer suits filed against the Arps in King County (Washington) Superior Court. [1]  Plaintiffs allege that Dean and Wanda Arp purchased one home in 2000 and another in 2005, both of which were subject to mortgages.  See Compl., ¶ 32.  In 2008, the Arps "discovered through public news that the BANK/FINANCE/MORTGAGE BUSINESS in not only Washington but

---

[1] Plaintiff Miller's interest in the suit is unclear.  The Complaint alleges that he is "Temporary Trustee" of Wanda Arp's estate and that he was Dean Arp's tenant "holding property interest in [the Arps'] real and chattel property . . . ."  Compl., ¶ 8; see also id., ¶ 35 ("Plaintiff Miller became a tenant of the Arps in 2009 midyear.").

across America had engaged in fraudulent practices in almost every facet of the mortgage transactions" and "became convinced that . . . almost every alleged mortgage transaction was incorporating some sort of fraud." Id., ¶¶ 33, 38. They decided "that BADGES OF FRAUD, massive evidence of appearance, suspicion upon the Arp's alleged mortgage transactions called for a clearing up and explanation!" Id., ¶ 38. Plaintiffs then "made a personal, legal, and moral decision to not be associated with any type of fraudulent practice" and attempted to unilaterally cancel their mortgage obligations on the basis that "[f]raud of any sort voids a contract." Id., ¶¶ 41-42, 46-48. According to court records provided by the King County Defendants, Plaintiffs' homes entered foreclosure and were purchased by Deutsche Bank National Trust Company and Federal National Mortgage Association. See King County Mot., App. C (Judgment in Case No. 11-2-41312-8 KNT in King County); id., App. D (Judgment in Case No. 12-2-23496-5 KNT in King County). When Plaintiffs refused to vacate the premises following the foreclosure sales, these institutions retained attorneys (now named as Defendants) to represent them in unlawful-detainer proceedings against Plaintiffs. See id., App. A (Parties' filings in Case No. 11-2-41312-8 KNT in King County); id., App. B (Parties' filings in Case No. 12-2-23496-5 KNT in King County). When judges (also named as Defendants) ruled in favor of the institutions, see Judgment in Case No. 11-2-41312-8 KNT; Judgment in Case No. 12-2-23496-5 KNT, Plaintiffs responded by filing the present suit.

Central to their numerous claims is Plaintiffs' belief that the Defendant judges had a financial interest in ruling for the financial institutions that now own the Arps' houses, and that the judges improperly based their rulings on this bias instead of the law. See Compl., ¶¶ 60, 70, 72-74. Plaintiffs argue that because the judges "participate[] in a benefit system that is minimum 60% invested in mortgage backed securities," id., ¶ 60, these institutions "provid[ed] value to

[the judges'] retirement and benefit system." Id., ¶ 74. As Defendants "knew, should have known, and had knowledge that each and every BANK/FINANCE/MORTGAGE/ FORCLOSURE issue before [them] was covered in Badges of Fraud," id., ¶ 57, they were not impartial. Id., ¶¶ 60, 65. Instead, they conspired with the other Defendants, including the institutions' lawyers, to deprive Plaintiffs of their property rights for mutual gain. Id., ¶¶ 70, 73-74.

## II.     Legal Standard

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a suit if the court lacks personal jurisdiction over her. The plaintiff bears the burden of establishing personal jurisdiction, FC Inv. Group LC v. IFX Markets, Ltd., 529 F.3d 1087, 1091 (D.C. Cir. 2008), and the requirements for personal jurisdiction "must be met as to each defendant." Rush v. Savchuk, 444 U.S. 320, 332 (1980). In deciding whether the plaintiff has shown a factual basis for personal jurisdiction over a defendant, the court resolves factual discrepancies in favor of the plaintiff. Crane v. N.Y. Zoological Soc'y, 894 F.2d 454, 456 (D.C. Cir. 1990). When personal jurisdiction is challenged, "the district judge has considerable procedural leeway in choosing a methodology for deciding the motion." 5B Charles A. Wright & Arthur R. Miller *et al.*, Federal Practice and Procedure § 1351 (3d ed. 2004). The court may rest on the allegations in the pleadings, collect affidavits and other evidence, or even hold a hearing. See id.

## III.    Analysis

Defendants make a number of arguments in support of dismissal, but the Court need only address the issue of personal jurisdiction, which Defendants correctly claim is lacking here. A court may exercise two forms of personal jurisdiction over a nonresident defendant: general and specific. General jurisdiction exists where a nonresident defendant maintains sufficiently

systematic and continuous contacts with the forum state, regardless of whether those contacts gave rise to the claim in the particular case. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & n.9 (1984). "[B]ecause general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test than for specific jurisdiction." Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 510 n.2 (D.C. Cir. 2002) (citation and internal quotation marks omitted). As a result, "[u]nder the Due Process Clause, such general jurisdiction over a foreign corporation is only permissible if the defendant's business contacts with the forum are continuous and systematic." FC Inv. Group, 529 F.3d at 1091-92 (internal quotation marks and citations omitted). In this case, Plaintiffs make no allegation (in either their Complaint or their Response to the Motions to Dismiss) that any of these Defendants has had any contacts with this forum. This Court, therefore, cannot exercise general jurisdiction over these Defendants.

Specific jurisdiction, conversely, exists where a claim arises out of the nonresident defendant's contacts with the forum. See Helicopteros, 466 U.S. at 414 n.8; see also United States v. Ferrara, 54 F.3d 825, 828 (D.C. Cir. 1995). "A plaintiff seeking to establish specific jurisdiction over a non-resident defendant must establish that specific jurisdiction comports with the forum's long-arm statute and does not violate due process." FC Inv. Group, 529 F.3d at 1094-95 (citation and internal citation omitted). The long-arm statute of the District of Columbia extends personal jurisdiction over a nonresident defendant where a claim arises from the defendant's

    (1) transacting any business in the District of Columbia;
    (2) contracting to supply services in the District of Columbia;
    (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
    (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if [the defendant] regularly does or solicits

> business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
> (5) having an interest in, using, or possessing real property in the District of Columbia;
> (6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or
> (7) marital or parent and child relationship in the District of Columbia . . . .

D.C. Code § 13-423(a). In order to comport with due process, a nonresident defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citations and internal quotation marks omitted). Those guarantees are satisfied "if the defendant has 'purposefully directed' his activities at residents of the forum," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)), and if "the litigation results from alleged injuries that 'arise out of or relate to' those activities." Id. (quoting Helicopteros, 466 U.S. at 414).

      A brief look at the filings demonstrates that no specific jurisdiction exists here either. Again, Plaintiffs make no allegation in their Complaint or Response that Defendants had any contacts – either related to this claim or otherwise – with the District of Columbia. They allege only that the D.C. long-arm statute reaches "federal employees having business and receiving benefit from the District," Resp. to King County at 3, and that their "[s]ummons established personal jurisdiction." Id.; Resp. to Attorneys at 2. They are mistaken. First, the judges are employees of the State of Washington, and the attorneys are privately employed. See Compl., ¶¶ 12-16. Second, Plaintiffs provide no support for the notion that their summons alone confers personal jurisdiction upon this Court. See Jennings v. Coutscoudis, 941 F. Supp. 5, 6-7 (D.D.C. 1996) (holding that a summons does not confer personal jurisdiction upon defendants who have

5

no connections with the District of Columbia). At the end of the day, Plaintiffs cannot prevail where they point to no contacts between Defendants and the District of Columbia.

Undeterred, Plaintiffs have also filed copies of letters they sent to state and federal officials in Washington State. The letters generally repeat the same opaque allegations that Plaintiffs assert here and request various forms of relief. See First Civil Statement from Plaintiffs (containing letters to Washington's Governor, Secretary of State, and Director of the Department of Licensing) (ECF No. 9); Second Civil Statement from Plaintiffs (containing letters to the F.B.I. in Seattle, the King County Sheriff, the King County Prosecutor, and the U.S. Attorney for the Western District of Washington) (ECF No. 10); Third Civil Statement from Plaintiffs (containing letters to the King County Sheriff and Prosecutor, and the U.S. Attorney for the Western District of Washington) (ECF No. 13). They do not, however, assist Plaintiffs in establishing personal jurisdiction.

In addition, Plaintiffs' Complaint named 199 John and Jane Does, five of whom were subsequently named in Plaintiffs' Notice of Intent to Name (ECF No. 8). They include three additional King County judges and two King County prosecutors. In the event the Court were to add these judges and prosecutors as Defendants, it could not exercise personal jurisdiction over them for the same reasons as set forth above: Plaintiffs fail to demonstrate that these parties have had any contacts with the District of Columbia.

While this Opinion simply holds that Plaintiffs brought suit in the wrong forum, the Court cautions that they should think twice before filing their Complaint elsewhere. Because "state judges are absolutely immune from liability for their judicial acts," Briscoe v. LaHue, 460 U.S. 325, 334 (1983), Plaintiffs' central theory of liability appears to rest on a rotten foundation. Persisting in this frivolous fight will waste everyone's time.

**IV.     Conclusion**

Because the Court lacks personal jurisdiction over these Defendants, their Motions to Dismiss will be granted.  A separate Order consistent with this Memorandum Opinion shall issue this date.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  March 20, 2013